1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AARON RAISER, an individual,<br><br>                              Plaintiff,<br><br>v.<br><br>THE U.S. DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA; AGENCY DIRECTOR, CASD; ALL NON-JUDICIAL STAFF OF CASD; KAREN BERETSKY; JUDGE ROBERT MCNAMEE'S LAW CLERK; SUSAN GELMIS; CHIEF JUSTICE JOHN ROBERTS; ROSLYNN MAUSKOPF; MARY MURGUIA; HON. JANIS L. SAMMARTINO; JUDGE CATHY ANN BENCIVENGO; HON. ROBERT S. HUIE; HON. BARRY TED MOSKOWITZ; HON. DANA M. SABRAW; JUDGE KAREN S. CRAWFORD; HON. CURIEL GONZALO; CHARI L. BOWERY; CHUCK SCHUMER; HOUSE MAJORITY LEADER; PRESIDENT JOSEPH BIDEN; DOES 1–150, INCLUSIVE,<br><br>                              Defendants. | Case No.:  23-CV-1894 TWR (DDL)<br><br>**ORDER DENYING PLAINTIFF'S *EX PARTE* OMNIBUS MOTION; DENYING PLAINTIFF'S *EX PARTE* APPLICATION; ORDERING PLAINTIFF TO SHOW CAUSE WHY ACTION SHOULD NOT BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION**<br><br>(ECF Nos. 20, 22) |

Presently before the Court are Plaintiff Aaron Raiser's *ex parte* Motion "(1) That all non-judicial staff be ordered not to communicate with the judge presiding over this case, and, to perform no work on this case, beginning immediately[;] (2) That the judge presiding over this action certify that he/she and he/she alone personally read the present motion and supporting memoranda, had no communications with non-judicial staff ab[]out this motion, and personally drafted the order on this motion themselves; (3) That the judge presiding in this action disclose all communications he/she has had with non-judicial staff concerning Plaintiff and/or his cases or the present case[; and] (4) Motion to Reconsider ECF 7 Access Denial" (ECF No. 22 ("Omnibus Mot."))[1] and *Ex Parte Application* for Order "(1) Allowing Early Discover[y of] Doe Defendant Identi[t]y; Request for Early Expedited Discovery; (2) That non-judicial staff not perform work on this motion other than getting it to the magistrate to work on and have no communications with the magistrate otherwise concerning Plaintiff o[r] this action or any other action of Plaintiff" (ECF No. 20 ("*Ex Parte* App.")).

Through his Omnibus Motion, Plaintiff asks that the Court make certain disclosures, statements, and certifications to Plaintiff, and asks that the Court issue a preliminary injunction prohibiting all court staff from working on this case. (*See generally id.*) Through his *Ex Parte* Application, Plaintiff seeks to obtain discovery related to the identity of the Doe Defendants he has named in his Complaint so that he can serve them prior to March 18, 2024, in accordance with the Court's January 25, 2024 order (ECF No. 7). (*Ex Parte App.* at 2.) He also renews his request to prohibit all court staff from working on this case. (*Id.*) Having determined that Plaintiff's Omnibus Motion and *Ex Parte Application* can be decided without the benefit of further briefing or oral argument, the

---

[1] On February 27, 2024, Plaintiff filed a "Notice of Partial Withdraw[al] of Motion" advising that he was withdrawing the portion of his February 22, 2024 motion requesting that "all non-judicial staff be ordered not to communicate with the judge presiding over this case, and, to perform no work on this case, beginning immediately." (ECF No. 21.) Plaintiff then filed a superseding *ex parte* motion requesting the same relief. (*See* ECF No. 22.) Accordingly, the Court does not consider Plaintiff's February 22, 2024, motion (ECF No. 18).

Court **DENIES** Plaintiff's Omnibus Motion and *Ex Parte* Application in their entirety as follows.  Further, the Court **ORDERS** Plaintiff **TO SHOW CAUSE** why the action should not be dismissed for lack of subject-matter jurisdiction.

## *EX PARTE* RELIEF

Plaintiff brings his Omnibus Motion *ex parte*.  (ECF No. 22.)  "In our adversary system, *ex parte* motions are disfavored." *Ayestas v. Davis*, 584 U.S. __, 138 S. Ct. 1080, 1091 (2018); accord *United States v. Thompson*, 827 F.2d 1254, 1257 (9th Cir. 1987)).  Consequently, "opportunities for legitimate *ex parte* applications are extremely limited." *Maxson v. Mosaic Sales Sols. U.S. Operating Co., LLC*, No. 14-cv-02116, 2015 WL 4661981, at *1 (D. Nev. July 29, 2015) (quoting *In re Intermagnetics Am., Inc.*, 101 B.R. 191, 193 (C.D. Cal. 1989)).  A proper *ex parte* motion must "address . . . why the regular noticed motion procedures must be bypassed," *i.e.*, "it must show why the moving party should be allowed to go to the head of the line in front of all other litigants and receive special treatment." *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995).  This requires the moving party to "show that the moving party's cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures" and "that the moving party is without fault in creating the crisis that requires *ex parte* relief, or that the crisis occurred as a result of excusable neglect." *Id.*; *see also* Hon. Todd W. Robinson Standing Order for Civil Cases § III.C.3.

Plaintiff's *ex parte* Omnibus Motion fails to meet any of these requirements.  He asserts in conclusory fashion that he "faces prejudice / irreparable harm without doing this ex parte given the defendants can't work on Plaintiff's case and are biased, and Plaintiff needs an impartial judge to work Plaintiff's case and motions etc. who is not biased by staff and Plaintiff is prejudiced by not having ECF filing access." (Omnibus Mot. at 2.)  Plaintiff makes no effort to explain why his request must bypass regular procedures for noticed motions and be heard on an expedited basis.  Plaintiff initiated this action on October 16, 2023—nearly six months ago—without seeking preliminary injunctive relief until February 22, 2024.  (*See* ECF No. 22.)  Because Plaintiff fails to make the necessary

1  showing, "[t]he pending motion[ is] not properly brought in an *ex parte* manner." *See*
2  *Maxson*, 2015 WL 4661981, at *2. "While the Court liberally construes the filings of pro
3  se litigants, pro se litigants are not relieved from following applicable rules of procedure,
4  including the Local Rule requiring a showing of compelling reasons for seeking relief on
5  an *ex parte* basis." *Id.* (citing *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010); *King v.*
6  *Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987)).

7        Nevertheless, in the interests of judicial economy, the Court will address the
8  substance of Plaintiff's Omnibus Motion. In future, Plaintiff must refrain from filing *ex*
9  *parte* requests "when the appropriate circumstances do not exist for such a filing." *Id.*

## MOTION FOR PRELIMINARY INJUNCTION

11        As a preliminary matter, "[i]t is so well settled as not to require citation of authority
12  that the usual function of a preliminary injunction is to preserve the status quo ante litem
13  pending a determination of the action on the merits." *Tanner Motor Livery, Ltd. v. Avis,*
14  *Inc.*, 316 F.2d 804, 808 (9th Cir. 1963). Accordingly, "it is not usually proper to grant the
15  moving party the full relief to which he might be entitled if successful at the conclusion of
16  a trial." *Id.* Such is the case here, where the declarations and relief Plaintiff seeks through
17  the instant Omnibus Motion and *Ex Parte* Application are the same declarations and relief
18  he seeks through his operative Complaint. (*Compare, e.g.*, Compl. ¶¶ 123, 135, 141–43,
19  153, 174, 176, 186, 237, *with* Omnibus Mot. at 5–13, 20–21 *and Ex Parte App.* at 8–13.)
20  For this reason alone, the Court would deny Plaintiff's motion for a preliminary injunction.

21        Regardless, Plaintiff's motion for a preliminary injunction fails on the merits. "A
22  plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the
23  merits." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). As this Court and
24  the Honorable Cathy Ann Bencivengo previously have informed Plaintiff, "[t]his Court
25  knows of no authority for the proposition that one district judge can order another district
26  judge to handle a particular case in a particular manner." *Raiser v. U.S. Dist. Ct. for S.*
27  *Dist. of Cal.*, No. 20-cv-1490, 2021 WL 4805531, at *1 (S.D. Cal. Oct. 13, 2021) ("*Raiser*
28  *II*") (quoting *Raiser v. U.S. Dist. Ct. for S. Dist. of Cal.*, No. 19-cv-1571, 2019 WL

4110608, at *2 (S.D. Cal. Aug. 28, 2019) ("*Raiser I*")). "Moreover, the relief Plaintiff seeks is unrealistic and frivolous, as judicial staff work for and at the direction of the judges." *Raiser II*, 2021 WL 4805531, at *1 (quoting *Raiser I*, 2019 WL 4110608, at *2). "[J]udges and their staff are absolutely immune from suit when performing judicial responsibilities." *Raiser I*, 2019 WL 4110608, at *2 (first citing *In re Castillo*, 297 F.3d 940, 947 (9th Cir.), *as amended* (Sept. 6, 2002); then citing *Ashelman v. Pope*, 793 F.2d 1072, 1075 (9th Cir. 1986); then citing *Mullis v. U.S. Bankr. Ct. for Dist. of Nev.*, 828 F.2d 1385, 1390 (9th Cir. 1987); then citing *Samuel v. Michaud*, 980 F.Supp.1381, 1403 (D. Idaho 1996)). Plaintiff, for the third time, has sued judges and their staff—who are absolutely immune from suit—and again seeks to have the undersigned order other judges in this District and from the United States Court of Appeals for the Ninth Circuit to administer their cases in a particular manner. (*See generally* ECF No. 1 ("Compl.").) Because Plaintiff remains unlikely to succeed on the merits of these claims for the reasons this Court and Judge Bencivengo, among many others, previously have outlined, Plaintiff has not established that he is entitled to preliminary injunctive relief on the merits. Accordingly, the Court again **DENIES** Plaintiff's request for a preliminary injunction. For the same reasons, the Court likewise **DENIES** Plaintiff's duplicate request for a preliminary injunction in his *Ex Parte* Application. (*See Ex Parte* App. at 20–21.)

## MOTION FOR RECONSIDERATION

On January 25, 2024, this Court issued an Order, among other things, denying without prejudice Plaintiff's request for ECF privileges. (*See* ECF No. 7 ("Order") at 2–4.) Plaintiff asks that the Court reconsider that portion of its Order. (Omnibus Mot. at 13–20.)

"Courts have inherent power to modify their interlocutory orders before entering a final judgment." *Balla v. Idaho State Bd. of Corr.*, 869 F.2d 461, 465 (9th Cir. 1989). "As long as a district court has jurisdiction over the case, then it possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *City of Los Angeles v. Santa Monica Baykeeper*, 254 F.3d 882, 885

(9th Cir. 2001) (emphasis omitted) (citation omitted); *see also Lahiri v. Universal Music & Video Distrib. Corp.*, 606 F.3d 1216, 1222 (9th Cir. 2010) ("[A] court may revisit prior decisions in a case and correct errors while the case is still pending."); *Koerschner v. Budge*, No. 05-cv-00587, 2009 WL 2382568, at *4 (D. Nev. July 30, 2009) ("The law is well-established that a district court has plenary authority over an interlocutory order, and the court has the inherent power to reconsider, revise or amend the order, without regard to the limitations of Rules 59 and 60."). In addition, Federal Rule of Civil Procedure 54(b) allows district courts to modify an interlocutory order "at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."

While reconsideration "is an 'extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources,'" and courts "should generally leave a previous decision undisturbed absent a showing that it either represented clear error or would work a manifest injustice," ultimately, "whether to grant or deny a motion for reconsideration is in the 'sound discretion' of the district court." *Raiser v. Casserly*, No. 18-cv-1836, 2020 WL 8970541, at *1 (S.D. Cal. Feb. 10, 2020); *see also United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997) (detailing main circumstances warranting reconsideration of interlocutory orders ("*Alexander* factors")); *Est. of Risher v. City of Los Angeles*, No. 17-cv-995, 2023 WL 5506005, at *5 (C.D. Cal. July 10, 2023) ("Though, the Court notes that even the *Alexander* factors do not appear to be deemed exhaustive and/or have been construed liberally in light of later Ninth Circuit case law reemphasizing a district court's inherent and broad power to rescind its own orders prior to a final judgment."); *Hansen v. Schubert*, 459 F. Supp. 2d 973, 998 n.5 (E.D. Cal. 2006) ("While the standards applicable to motions for reconsideration of final judgments or orders under Rules 59(e) (final judgments) and 60(b) (final judgments and orders) technically do not delimit the court's inherent discretion to reconsider interlocutory orders, the court nonetheless finds them to be helpful guides to the exercise [of] its discretion.").

/ / /

Plaintiff argues extensively that the Court's prior Order was incorrect and appears to contend that the Court committed "clear error" because many of the filings the Court identified in its Order as repetitive were amended motions. (Omnibus Mot. at 13–20; *see also* ECF No. 22 at 21–22 ("Raiser Decl.") ¶ 5.) While Plaintiff is correct that amended motions supersede the original motions, *see Schoenfeld v. Marshall*, No. 07-cv-7447, 2014 WL 11881036, at *1 (C.D. Cal. Oct. 9, 2014), Plaintiff's habit of filing amended motions needlessly has multiplied the filings in the actions he previously has brought. (*See* Order at 4.) Plaintiff also ignores that this Court, including the undersigned, previously has found his filings frivolous. *See, e.g.*, *Raiser I*, 2021 WL 4805531, at *1 (denying Plaintiff's renewed *ex parte* application for temporary restraining order or preliminary injunction and rebuking Plaintiff for failing to heed Court's directives); *Raiser v. Casserly*, No. 18-cv-1836, ECF No. 83 (S.D. Cal. Jan. 4, 2021) (denying Plaintiff's fourth motion for PACER access where Plaintiff failed to present "any information not previously considered by the Court in its orders denying Plaintiff's motions"). Moreover, the frivolous nature of Plaintiff's Omnibus Motion does nothing to allay this Court's concern that Plaintiff may continue to abuse the electronic filing system if granted access. Finally, Plaintiff takes umbrage with the portion of the Court's Order taking judicial notice of certain filings and actions from cases in which Plaintiff previously was involved. (*See* Omnibus Mot. at 11–14.) Plaintiff is correct that the Court may not take judicial notice of disputed facts contained in public records. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018). Though not expressly stated, the Court's prior Order judicially noticed the existence of the prefiling orders entered by other courts for the limited purpose of finding that such orders had been entered. (*See* Order at 3–4.) Plaintiff disputes not the existence of such orders but the propriety of such orders. (*See, e.g.*, Compl. ¶ 37, 81.) The Court did not commit clear error.

In sum, Plaintiff's Omnibus Motion fails to present any newly discovered evidence or legal authority demonstrating an intervening change in controlling law. The mere fact that Plaintiff disagrees with the Court's ruling, or with the reasoning and authority that

supported it, does not warrant reconsideration.  Accordingly, the Court **DENIES** Plaintiff's request for reconsideration.

## *EX PARTE* APPLICATION

On January 25, 2024, the Court issued an order, among other things, granting Plaintiff's request for a sixty-day extension of time, or until March 18, 2024, to serve twelve named Defendants. (*See* ECF No. 7 at 4–6.) Plaintiff now represents that he "needs early discovery to discover[] contact info[rmation] to serve . . . certain Doe type defendants" in light of the March 18, 2024 deadline. (*Ex Parte* App. at 1.)

A party may not seek discovery from any source before the Rule 26(f) conference unless that party first obtains a stipulation or court order permitting early discovery. *See* Fed. R. Civ. P. 26(d)(1).  Courts in the Ninth Circuit apply the "good cause" standard in deciding whether to permit early discovery. *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002) (adopting the conventional standard of "good cause" in evaluating a request for expedited discovery).  Good cause exists "where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Id.*

District courts in the Ninth Circuit apply a four-factor test for determining whether good cause exists to allow for expedited discovery to identify certain defendants. *See Columbia Ins. Co. v. seescandy.com*, 185 F.R.D. 573, 578–80 (N.D. Cal. 1999).  First, the plaintiff should "identify the missing party with sufficient specificity such that the Court can determine that the defendant is a real person or entity who could be sued in federal court." *Id.* at 578.  Second, the plaintiff must describe "all previous steps taken to locate the elusive defendant" to ensure that plaintiff has made a good faith effort to identify the defendant. *Id.* at 579.  Third, plaintiff should establish that its lawsuit could withstand a motion to dismiss. *Id.*; *see also Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980) ("[T]he plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." (citations omitted)).  Finally, "the

plaintiff should file a request for discovery with the Court, along with a statement of reasons justifying the specific discovery requested as well as identification of a limited number of persons or entities on whom discovery process might be served and for which there is a reasonable likelihood that the discovery process will lead to identifying information about defendant that would make service of process possible." *Columbia Ins.*, 185 F.R.D. at 580.

Plaintiff specifically identifies Defendant "Judge Robert McNamee's Law Clerk" and "non-judicial court staff who are defendants in this action, mainly the law clerk staff who work on Plaintiff's cases," whose identities Plaintiff claims he has determined from his review of "the File Properties feature of the .pdf files issued for orders etc." (*Ex Parte* App. at 2.) As to Judge Robert McNamee's Law Clerk, the Court finds that Plaintiff has satisfied the first two factors because he has identified the individual with sufficient specificity and has outlined his attempts to locate this person, which include "spen[ding] several hours online and going through documents seeing if he can determine his name[;]" submitting a "FOIA request for documents that would disclose his name[,] which has been pending for over 4 years now and recent efforts to get that information are unsuccessful[;]" and "check[ing] court records and even call[ing] McNamee's CRD to see if they could tell me his name." (*Id.* at 2, 4.) As to the Doe Defendants, who appear to be individuals with the last names "York and Shoemaker[]" (*id.* at 7), the Court likewise finds that Plaintiff has satisfied the first two factors because he has identified these individuals with sufficient specificity and has described his attempts to locate the Defendants by reviewing the metadata associated with orders issued by this Court. (*See id.*)

However, Plaintiff fails to satisfy the third factor, whether the lawsuit could withstand a motion to dismiss.[2] The Court has reviewed the allegations of the Complaint,

---

[2] Plaintiff argues that "it is far from clear that any of these Defendants would be dismissed under R. 12(b). If that is an issue, the matter needs briefing. Plaintiff can show this action can survive a motion to dismiss." (*Ex Parte* App. at 4.) Plaintiff's *Ex Parte* Application *was* his opportunity to "show this action can survive a motion to dismiss." He has not done so.

which is 45 pages long; purports to describe the "greatest undertaking of corruption ever to exist," (Compl. ¶ 2); and discusses Plaintiff's dissatisfaction with the proceedings in several other federal lawsuits he has initiated in this District and with his treatment by the U.S. Court of Appeals for the Ninth Circuit and the Supreme Court of the United States (*see generally id.*). The crux of Plaintiff's claims appears to be that Plaintiff has been "denied meaningful access to this Court, along with denial of process of law, substantive and procedural, in cases 3:18-cv-01836, 3:19-cv-01295, 2019cv01571, and 15-cv-01145," (*id.* ¶ 178), as well as "3:20-cv-01490," (*id.* ¶ 5). Specifically, Plaintiff alleges that federal judges "are not doing their jobs and are abdicating their duties, which is administrative in nature, to get someone else off the street analytically to do their jobs." (*Id.* ¶ 11.) By "someone else off the street," Plaintiff appears to mean court staff and law clerks. (*See id.* ¶¶ 11, 13.) Plaintiff further contends that a judge's "delegation to staff can amount to a violation of the separation of powers clause[.]" (*Id.* ¶ 126.)

As far as remedies, Plaintiff seeks to have "3:18-cv-01836, 3:19-cv-01295, 2019cv01571, and 15-cv-01145 . . . declared void ab initio" as well as "3:20-cv-1490." (*Id.* ¶¶ 6, 179.) Additionally, Plaintiff requests a range of remedies, including: restricting court staff members' access to PACER, as such access allegedly "has caused extra-judicial biasing," (*id.* ¶ 138); a declaration that Plaintiff "never should have been placed on the restricted filer list in the U.S. Supreme Court or 9[th] Circuit[]" or that "the presiding judge of such courts need to personally review and/or decide" whether Plaintiff properly was placed on those lists, (*id.* ¶ 141); a declaration that courts must engage in "IRAC legal analysis or its equivalent," (*id.* ¶ 144); a declaration that the Ninth Circuit wrongly decided Plaintiff's appeals, (*id.* ¶¶ 155–56); a declaration that Roslynn Mauskopf "ensure that ECF access is available as a matter of right at filing to pro pers absent abuse" and "should provide a budget to Congress for sufficient funding to the federal court," (*id.* ¶¶ 162, 164); and a declaration that Chief Justice John Roberts should "investigate the wrongs alleged herein," "implement training of all new judges as to how to manage their courts, staff," and

"work with fellow members of the Federal Judicial Center to ensure a much better funded federal court," (*id.* ¶¶ 169, 191).

As set forth above—and as Plaintiff well knows by now—his claims against federal judges in their individual capacities are barred by the doctrine of judicial immunity because judges are absolutely immune from suit when performing judicial responsibilities. *See In re Castillo*, 297 F.3d at 947 (absolute judicial immunity is afforded to judges for acts performed by the judge that relate to the judicial process); *see also Raiser I*, 2019 WL 4110608, at *2 (dismissing as frivolous Plaintiff's complaint and explaining that "judges and their staff are absolutely immune from suit when performing judicial responsibilities"); *Raiser II*, 2021 WL 4805531, at *1 (denying Plaintiff's motion for preliminary injunction because judges and staff are immune from suit); *Raiser v. City of Temecula*, No. 19-cv-1465, 2020 WL 13582127, at *1 (C.D. Cal. Apr. 8, 2020) (admonishing Plaintiff and *sua sponte* dismissing judicial defendants and staff because they are entitled to absolute immunity); *Raiser v. Gelmis*, No. 22-cv-62, 2023 WL 121222, at *4–6 (D. Mont. Jan. 6) ("*Gelmis*") (recommending dismissal of claims against Chief Justice Roberts, Ninth Circuit Judges, United States District Court Judge Gutierrez, Susan Gelmis, Roslynn Mauskopf, and court reporters under doctrines of sovereign immunity and recommending dismissal of claims against Ninth Circuit Judges, United States District Court Judge Gutierrez, Susan Gelmis, and court reporters as barred by doctrine of judicial immunity), *report and recommendation adopted by* 2023 WL 4248726 (D. Mont. June 29, 2023). "This absolute immunity insulates judges from charges of erroneous acts or irregular action, even when it is alleged that such action was driven by malicious or corrupt motives or when the exercise of judicial authority is 'flawed by the commission of grave procedural errors.'" *In re Castillo*, 297 F.3d at 947 (quoting *Stump v. Sparkman*, 435 U.S. 349, 359 (1978)); *Ashelman*, 793 F.2d at 1075 ("Judicial immunity applies however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff." (quotation omitted)).

      Plaintiff's claims against judicial staff, Judge Robert McNamee's Law Clerk, Susan Gelmis, Karen Beretsky, and Chari Bowery likewise are barred. "Absolute judicial immunity is not reserved solely for judges, but extends to nonjudicial officers for all claims relating to the exercise of judicial functions." *In re Castillo*, 297 F.3d at 947 (quotation omitted); *see also Moore v. Brewster*, 96 F.3d 1240, 1244 (9th Cir. 1996) ("Even if, as [plaintiff] alleges, [the clerk of the court] deceived [plaintiff] regarding the status of the bond and improperly conducted hearings to assess costs, all in coordination with Judge Brewster, such acts would fall within [the clerk's] quasi-judicial duties and are thus protected by absolute immunity. [Judge Brewster's law clerk], while acting as law clerk for Judge Brewster, enjoyed absolute judicial immunity."), *superseded by statute on other grounds as stated in Nordin v. Scott*, No. 22-cv-15816, 2023 WL 4418595 (9th Cir. July 10, 2023); *Mullis v. U.S. Bankr. Ct. for Dist. of Nev.*, 828 F.2d 1385, 1390 (9th Cir. 1987) ("Court clerks have absolute quasi-judicial immunity from damages for civil rights violations when they perform tasks that are an integral part of the judicial process.").

      "Judicial immunity discourages collateral attacks on final judgments through civil suits, and thus promotes the use of appellate procedures as the standard system for correcting judicial error." *In re Castillo*, 297 F.3d at 947 (quotation omitted). What is more, to the extent Plaintiff objects to an order issued in another federal case that is not barred by judicial immunity, Plaintiff's recourse is to raise his objection in that case or appeal the decision in that case, rather than file a separate suit collaterally attacking the original case. *See City of S. Pasadena v. Mineta*, 284 F.3d 1154, 1157 (9th Cir. 2002) ("Even objections to subject-matter jurisdiction—which may be raised at any time, even on appeal—must be raised while the lawsuit is still pending; they may not be raised for the first time by way of collateral challenge in a subsequent action.").

      Plaintiff's claims against President Biden; Mike Johnson; Chuck Schumer; Susan Gelmis; Roslynn Mauskopf; U.S. Court of Appeals for the Ninth Circuit Chief Judge Murguia; U.S. District Court Judges Moskowitz, Bencivengo, Crawford, and Curiel; Karen Beretsky; Chari Bowery; and various court staff in their official capacities for monetary

damages is a lawsuit against the federal government. As such, they also are barred by the doctrine of sovereign immunity. *See Consejo de Desarrollo Economico de Mexicali, A.C. v. United States*, 482 F.3d 1157, 1173 (9th Cir. 2007) ("[A] *Bivens* action can be maintained against a defendant in his or her individual capacity only, and not in his or her official capacity. This is because a *Bivens* suit against a defendant in his or her official capacity would merely be another way of pleading an action against the United States, which would be barred by the doctrine of sovereign immunity." (citation omitted)); *accord DaVinci Aircraft, Inc. v. United States*, 926 F.3d 1117, 1127 (9th Cir. 2019). As this Court previously advised Plaintiff, neither the Declaratory Judgment Act, 28 U.S.C. § 2201; nor the All Writs Act, 28 U.S.C. § 1651; nor the mandamus statute, 28 U.S.C. § 1361, provides a waiver of sovereign immunity. *See Raiser v. Serdis*, No. 20-cv-1490, 2023 WL 3689988, at *2–3 (S.D. Cal. May 26, 2023). Finally, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.*, does not waive sovereign immunity, and the United States has not consented to such suits. *See Yagman v. Whittlessey*, No. 12-cv-8413, 2012 WL 12878732, at *2 (C.D. Cal. Oct. 15, 2012) ("No RICO statute waives the sovereign immunity of the United States or its agencies." (first citing *McMillan v. Dep't of Interior*, 907 F. Supp. 322, 326 (D. Nev. 1995) (citing 18 U.S.C. §§ 1961–1962, 1964), *aff'd*, 87 F.3d 1320 (9th Cir. 1996) (unpublished table decision); then citing *Berger v. Pierce*, 933 F.2d 393, 397 (6th Cir.1991))). Moreover, Plaintiff's RICO claim against "All Non-Official Capacity Defendants" expressly relies on a criminal statute, 18 U.S.C. § 1512, (*see* Compl. ¶ 293), which does not create a private right of action. *Gelmis*, 2023 WL 121222, at *6 (first citing *Banks v. Kramer*, No. 09-cv-5140, 2009 WL 5526780, at *1 (D.C. Cir. Dec. 30, 2009); then citing *Allen v. Gold Country Casino*, 464 F.3d 1044, 1048 (9th Cir. 2006)); *see also Wilkins v. Holcolm*, No. 22-cv-3608, 2022 WL 2193411, at *5 (C.D. Cal. June 17, 2022) ("There is no private cause of action for an alleged violation of section 1512.").

///

///

Because the Court finds that Plaintiff has failed to establish that his Complaint would withstand a motion to dismiss, the Court does not consider the final factor and **DENIES** Plaintiff's request for early discovery.

### ORDER TO SHOW CAUSE

Although Defendants have not yet moved to dismiss this action for lack of subject-matter jurisdiction, "this court has an independent obligation to address *sua sponte* whether [it] ha[s] subject matter jurisdiction." *Allstate Ins. Co. v. Hughes*, 358 F.3d 1089, 1093 (9th Cir. 2004) (citing *Dittman v. California*, 191 F.3d 1020, 1025 (9th Cir. 1999)); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, . . . which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). "It is to be presumed that a cause lies outside this limited jurisdiction, . . . and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* (citation omitted).

In light of the Court's above analysis regarding the doctrines of judicial immunity and sovereign immunity, the Court harbors doubts regarding its subject-matter jurisdiction. The Court therefore **ORDERS** Plaintiff **TO SHOW CAUSE** <u>on or before April 2, 2024,</u> why this action should not be dismissed for lack of subject-matter jurisdiction. Plaintiff's response to this Order **SHALL NOT EXCEED** <u>ten (10) pages</u>. If Plaintiff instead elects to dismiss this action voluntarily, no further response to this Order will be required. *Should Plaintiff fail timely to respond to this action, the Court will dismiss without prejudice this action pursuant to Federal Rule of Civil Procedure 12(h)(3).*

/ / /
/ / /
/ / /
/ / /
/ / /

14

23-CV-1894 TWR (DDL)

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's Omnibus Motion (ECF No. 22) and *Ex Parte* Application (ECF No. 20) in their entirety and **ORDERS** Plaintiff **TO SHOW CAUSE** as outlined above why this action should not be dismissed for lack of subject-matter jurisdiction.

**IT IS SO ORDERED.**

Dated: March 5, 2024

Honorable Todd W. Robinson
United States District Judge